CAMPBELL, Acting Chief Judge.
In this case, we are asked to determine whether a county may require candidates for elected county office to be residents of that county for two years immediately pri- or to qualifying for the election. The trial court found that the two-year period was not shown to be necessary to the county’s stated goal of ensuring an informed electorate and informed candidates, and that, consequently, the requirement violated the equal protection clause. We agree.
Apparently, there had been some public concern in Sarasota County that, due to the mobile nature of the community, not only were voters not able to adequately familiarize themselves with the candidates, but some candidates did not have sufficient knowledge of or commitment to Sarasota County to properly serve the county. In response, the Sarasota County Charter Review Board placed Ordinance 90-69, containing the two-year durational residency requirement at issue here, before the voters. Eighty-three percent of those who voted did so in favor of the amendment, which then became section 6.6 of the Sarasota County Charter. The adopted charter amendment read, in pertinent part, as follows: “Anyone who wishes to qualify for a position that does not require residency within a specific district must have been a Sarasota County resident for two (2) years immediately prior to qualification.”
Appellee, a declared candidate for the office of Sheriff of Sarasota County, challenged the amendment by filing a three-count complaint, naming as defendants the appellants here and requesting declaratory and injunctive relief.
The trial court denied appellee’s request for injunctive relief, but in a subsequent order, declared the ordinance unconstitutional, finding the right to run for public office “inextricably entwined” with the fundamental right to travel. The court, using an equal protection analysis, applied the rational basis test and found that although *1167 the county had shown that the residency restriction was based on reasonable and legitimate governmental interests, the county had failed to “show the inadequacy of alternative and less restrictive methods of achieving its goal.”
On appeal, appellants, the Sarasota Board of County Commissioners and the Supervisor of Elections, argue that the two-year candidate durational residency requirement did not violate the equal protection clause. It is their position that the traditional equal protection analysis should be applied to such requirements. Under the traditional approach, the legislation may be upheld unless it is “patently arbitrary” and bears no rational relationship to a legitimate governmental interest. Frontiero v. Richardson, 411 U.S. 677, 683, 93 S.Ct. 1764, 1768, 36 L.Ed.2d 583, 589 (1973). Appellants argue that the ordinance here had a legitimate legislative purpose: To protect the integrity of the political process. Appellants contend that once a residency requirement is found justified, the precise time period selected need only fall within a reasonable range. Appellee takes the opposite position, arguing that candidate durational residency provisions should be given strict scrutiny. Under the strict scrutiny standard, any legislation that seriously affects fundamental rights or a suspect class must be shown to be necessary to promote a compelling governmental interest in order to be upheld.[1] If neither a fundamental right nor a suspect class is involved, however, the traditional analysis is applied. Appellee takes the position that candidate durational residency requirements seriously affect the fundamental right to travel. Alternatively, appellee argues that even if the traditional rational basis test is applied, the provision at issue in this case still violates the equal protection clause.
While this provision, a two-year durational residency requirement for candidates for elected office, does not affect a suspect class (United States v. Carotene Products Co. 304 U.S. 144, 152-153, n. 4, 58 S.Ct. 778, 783-784, 82 L.Ed. 1234, 1242 (1938) [suspect class described as “discrete and insular minority”]; Frontiero, 411 U.S. 677, 686, 93 S.Ct. 1764, 1770, 36 L.Ed.2d 583, 591 (1973) [suspect class said to bear an “immutable characteristic determined solely by the accident of birth”]), a similar two-year candidate durational residency requirement has been held to seriously infringe on the fundamental right to travel and thus to violate the protections of the equal protection clause. Green v. McKeon, 468 F.2d 883, 884 (6th Cir.1972). Since Green is not controlling authority, however, we feel compelled to examine the reasoning employed in Green and other cases in order to reach our decision.
Our review of those cases leads us to believe that it is not the existence of the candidate durational residency requirement, by itself, that seriously infringes on a fundamental right so as to require application of strict scrutiny; rather, it is the length of the durational residency requirement that determines which equal protection analysis will be applied. Accordingly, a fundamental right is not considered seriously infringed so as to require a strict scrutiny analysis unless the candidate durational residency requirement is deemed excessive. Treiman v. Malmquist, 342 So.2d 972 (Fla.1977); Marina v. Leahy, 578 So.2d 382 (Fla. 3d DCA 1991); Daves v. City of Longwood, 423 F.Supp. 503 (M.D.Fla.1976). Conversely, a candidate durational residency requirement that is deemed reasonable is not considered to seriously infringe using the traditional equal protection analysis. While this method of considering an equal protection challenge would appear, at first blush, to be putting the cart before the horse, in actuality, it places the emphasis where it should be, on the magnitude of the legislation’s effect on the fundamental right or suspect class. Only serious infringements merit resort to the compelling interest test.
*1168 Applying these principles to the instant case, we ask first whether a two-year candidate residency requirement is reasonable. We agree with the trial court that it is not. The evolution of communication and transportation that allows individuals to move easily between communities and states renders such a two-year residency requirement particularly onerous. Appellants could identify no reason for setting the period at two years. There was no evidence that candidates would be any more familiar with county issues for having lived in the county for the preceding two years. In fact, in explaining how the Charter Review Board arrived at the two-year term, as opposed to a three-year or a five-year term, one of its members testified on cross-examination that it was a “judgmental [sic] call. It’s not carved in stone anywhere." As the trial court observed in its written order:
The Court finds that the County has failed to provide any proof that the residency requirement sub judice has any beneficial effect toward the stated goal of improved knowledge of the candidates by the voter and improved knowledge of the County by the candidate. No proof was adduced to demonstrate why two years was better than one, or better than six months. No proof was adduced that a two year restriction was effective at all.
Having agreed with the trial court that the two-year term is unreasonable, we necessarily must apply strict scrutiny to this durational residency requirement. Pursuant to that standard, the residency requirement cannot be upheld unless it is necessary to a compelling state interest. As set forth above, appellants clearly have failed to show that the requirement was reasonable. They certainly have not shown it to be necessary to a compelling state interest. It has become an established part of public life that residency is not a requirement in those situations where government entities rely on nationwide talent searches to fill key government executive positions. Appellants have not only failed to show why two years is necessarily better than one year or even one day, they have failed to show the inadequacy of alternative or less restrictive methods that would accomplish their stated objective.
We conclude that the trial court was correct that the two-year durational residency requirement here violates the equal protection clause and, accordingly, affirm.
SCHOONOVER and HALL, JJ., concur.

. Close scrutiny is required where the restriction has "a real and appreciable impact on the exercise of the franchise.” Bullock v. Carter, 405 U.S. 134, 144, 92 S.Ct. 849, 856, 31 L.Ed.2d 92, 100 (1972).