Steven J. PELOZA, Appellant/Cross–
Appellee,

v.

Carol L. FREAS, City Clerk,
Appellee/Cross–Appellant.

No. S–4772/4796.

Supreme Court of Alaska.

March 25, 1994.

Steven J. Peloza, pro se.

Cary R. Graves, City Atty., Kenai, for
appellee/cross-appellant.

Before MOORE, C.J., and RABINOWITZ,
MATTHEWS and COMPTON, JJ.

## OPINION

RABINOWITZ, Justice.

This appeal concerns a challenge to the
constitutionality of Kenai City Charter Sec-
tion 2–1(b), which imposes a three-year dura-

tional residency requirement for candidacy for the office of city council. Section 2–1(b) of the Kenai City Charter provides:

> Only qualified voters of the city who, at the time of their election or choice to fill a vacancy, are at least twenty-one years old, and have resided within the City for three years, one year of which must have been immediately prior thereto, shall be qualified for the offices of Mayor and other councilmen. If a councilman ceases to be a resident of this City, he shall thereupon cease to hold office.

## I. *FACTS AND PROCEEDINGS*

In August of 1991, appellant Steven Peloza, a two-year resident of the City of Kenai, attempted to file a nominating petition for a seat on the Kenai City Council. Carol Freas, the Kenai City Clerk, examined the nominating petition and ascertained that a portion of the petition had been marked out. Peloza had deleted from the petition the portion that would have stated that he met the three-year residency requirement imposed by the Kenai City Charter. Freas informed Peloza that his petition was "facially incomplete" and refused to accept it.

Peloza then filed a complaint and "Ex Parte Request for Writ of Mandate" in the superior court. He sought a declaration that Section 2–1(b) is unconstitutional and an order directing Freas to place his name on the official ballot. The superior court upheld the constitutionality of the charter provision and dismissed Peloza's complaint. Peloza now brings this appeal.

## II. *DISCUSSION*

The primary issue in this appeal is whether the three-year durational residency requirement for city council candidates imposed by section 2–1(b) is constitutional. Be-

fore addressing the merits of this question we discuss two preliminary issues.

### A. *Mootness*

We generally refrain from deciding legal questions that the facts of a case have rendered moot. *Falke v. State,* 717 P.2d 369, 371 (Alaska 1986). Because the 1991 City of Kenai election for council seats is over and Peloza no longer resides in Kenai, Freas urges this court to consider the question of the constitutionality of Section 2–1(b) under the public interest exception to the mootness doctrine. The criteria we look to in determining whether to apply that exception are

1) whether the disputed issues are capable of repetition, 2) whether the mootness doctrine, if applied, may repeatedly circumvent review of the issues and, 3) whether the issues presented are so important to the public interest as to justify overriding the mootness doctrine.

*Falke,* 717 P.2d at 371 (quoting *Hayes v. Charney,* 693 P.2d 831, 834 (Alaska 1985)) (citations omitted).

We agree with Freas that this case falls within the public interest exception to the mootness doctrine. First, the issue is capable of repetition, although it is unlikely to recur between the parties. Second, there is a strong likelihood that application of the mootness doctrine may repeatedly frustrate review. Third, we view the question of the constitutionality of the three-year residency requirement for local elections as one of such public importance that it justifies overriding the mootness doctrine.

### B. *Failure to Join an Indispensable Party Under Civil Rule 19*

Before the superior court, Freas moved pursuant to Civil Rule 12(b)(7) to dismiss Peloza's complaint on the ground that he failed to join the City of Kenai, an indispensable party under Civil Rule 19.[1] In

---

1. Civil Rule 12(b)(7) provides that the defense of a failure to join a party under Rule 19 may at the option of the pleader be made by motion. Civil Rule 19(a) provides:

   **Persons to Be Joined if Feasible.** A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall

be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons

State, Dep't of Highways v. Crosby, 410 P.2d 724, 725–26 (Alaska 1966), we discussed the test for determining when a party is indispensable:

> An indispensable party is one whose interest in the controversy before the court is such that the court cannot render an equitable judgment without having jurisdiction over such party. The determination of indispensability or lack of it involves a discretionary balancing of interests. On the one hand, consideration must be given to the possibility of rendering a judgment that will have an adverse factual effect on the interests of persons not before the court, and to the danger of inconsistent decisions, the desire to avoid a multiplicity of actions, and a reluctance to enter a judgment that will not end the litigation. On the other hand, consideration must be given to the desirability of having some adjudication if at all possible rather than none, leaving the parties before the court without a remedy because of an "ideal desire to have all interested persons before the court." Courts exist for the determination of disputes, and they have an obligation in particular litigation to make meaningful determinations if at all possible.

(Footnotes omitted).

We are not persuaded that the City of Kenai is an indispensable party under the Crosby test. It cannot be fairly said that the interests of the City of Kenai were not adequately represented before the superior court. The Kenai city attorney represented Freas, the city clerk, at all stages of the case at bar. Thus, it appears that the City of Kenai perceived its interests to be identical to those of Carol Freas in this litigation. Even if we were to conclude that the City of Kenai is an indispensable party and should have been joined, Peloza's failure to do so does not warrant dismissal of his complaint and consequent failure to make a meaningful determination of the merits of this dispute. The appropriate remedy would be to order that the City of Kenai be joined as a party.[2]

## C. Constitutionality of Section 2–1(b) of the Kenai City Charter

■ In his pro se complaint and ex parte request for a "Writ of Mandate," Peloza challenges the three-year residency requirement imposed by Section 2–1(b) on the grounds that it denied him equal protection of law by impermissibly burdening his right to seek and hold public office, it unconstitutionally burdened his right of travel,[3] and it unconstitutionally limited the ability of voters to participate in the electoral process. Freas advanced two interests in support of the City of Kenai's three-year residency requirement:

> 1) to allow the candidate sufficient exposure to the constituents to allow them to judge the candidate's character, knowledge and reputation; and 2) to ensure that council members are sufficiently familiar with the community which they are to govern.

Although Peloza's pleadings and briefs emphasize violations of the United States Constitution,[4] we believe it appropriate to analyze Section 2–1(b) of the Kenai City Charter under the more demanding state equal rights provision, Article I, section 1 of the Alaska

---

already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

**2.** See B.B.P. Corp. v. Carroll, 760 P.2d 519, 526 (Alaska 1988). Freas asks that if we reverse the superior court's holding that Section 2–1(b) is constitutional, we order dismissal of the action pursuant to Civil Rule 19(b).

**3.** See generally Andrew C. Porter, Comment, *Toward a Constitutional Analysis of the Right to Interstate Travel*, 86 N.W.L.Rev. 820 (1992) (tracing the development of the right in the federal courts).

**4.** The Fourteenth Amendment to the United States Constitution provides, "No state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1, cl. 4.

Constitution.[5] The federal equal protection clause requires only rational-basis scrutiny of a law like this one. *See MacDonald v. City of Henderson,* 818 F.Supp. 303, 305–06 (D.Nev.1993) (surveying federal cases). Alaska's equal rights clause, in contrast, requires much greater scrutiny. *See Alaska Pac. Assurance Co. v. Brown,* 687 P.2d 264 (Alaska 1984).

Alaska law analyzes alleged violations of the equal rights clause using a "sliding scale." When fundamental rights or constitutionally suspect classifications are involved, we employ heightened scrutiny. The rigor of the scrutiny determines what the government must show:

> As the level of scrutiny selected is higher on the [sliding] scale, we require that the asserted governmental interests be relatively more compelling and that the legislation's means-to-ends fit be correspondingly closer. On the other hand, if relaxed scrutiny is indicated, less important governmental objectives will suffice and a greater degree of over/or underinclusiveness in the means-to-ends fit will be tolerated.

*State v. Ostrosky,* 667 P.2d 1184, 1193 (Alaska 1983).[6]

Peloza's appeal raises a question of first impression: whether a three-year residency requirement for local office is constitutional under the equal protection clause of Alaska's Constitution. Neither *Gilbert v. State,* 526 P.2d 1131 (Alaska 1974), nor *Castner v. City*

*of Homer,* 598 P.2d 953 (Alaska 1979), directly answers that question.

In *Gilbert,* we addressed a challenge to the constitutionality of Article II, section 2 of the Alaska Constitution and AS 15.25.030, which together conditioned eligibility for candidacy to statewide legislative office upon three years of residency in the state and one year in the election district. After analysis of federal cases and our own authority, we concluded that "the residency requirements of Article II, Section 2 of the Alaska Constitution should be viewed with strict judicial scrutiny." *Gilbert,* 526 P.2d at 1134. We further concluded that the state had shown two compelling interests:

> First, the requirements are necessary to permit exposure of the candidate to his prospective constituents so they may judge his character, knowledge and reputation. Second, they are needed to ensure that legislators are familiar *with the diverse character of the state where they will participate in the lawmaking process.*

*Id.* at 1134 (emphasis added).

*Castner* presented us with a challenge to the constitutionality of Homer City Code Section 3–200.2, which imposed a one-year durational residency requirement for candidacy for city office. We assumed, without deciding, "that the right to seek elective public office should be treated as fundamental and subject to strict scrutiny." *Castner,* 598 P.2d at 955. In affirming the superior court's decision upholding the constitutionali-

5. SECTION 1. This constitution is dedicated to the principles that all persons have a natural right to life, liberty, the pursuit of happiness, and the enjoyment of the rewards of their own industry; that all persons are equal and entitled to equal rights, opportunities, and protection under the law; and that all persons have corresponding obligations to the people and to the State.

6. In *State v. Cosio,* 858 P.2d 621, 626 (Alaska 1993), we noted that analysis under the federal equal protection clause is divided into three parts.

> First, the United States Supreme Court has reserved its most searching review—strict scrutiny—for legal classifications that burden suspect classes of individuals or that burden a fundamental right. Only classifications based on race, alienage, and national origin merit

strict scrutiny. Strict scrutiny requires that the government show that its law is narrowly tailored to the achievement of a compelling government interest....

> Second, the Supreme Court applies a less searching form of review—intermediate scrutiny—to legal classifications that burden quasi-suspect classes. Thus far, the Supreme Court has applied intermediate scrutiny to classifications based on gender and illegitimacy.... Under intermediate scrutiny, the government must show that its law bears a substantial relationship to an important government interest....

> Third, the Supreme Court reviews all other legal classifications under its most deferential standard of review—rational basis. Under rational basis review, the government only need show that the challenged law is rationally related to the attainment of a legitimate state interest....

ty of the one-year durational residency requirement for candidacy for city office in Homer, we said,

> There is sufficient authority from other jurisdictions either to uphold or to strike down the one year durational residency requirement in the case at bar. *In general, the weight of authority is against longer durational residency requirements for local offices,* but the authorities are fairly evenly divided on the constitutionality of a one year residency requirement. The courts validating a one year durational residency requirement have found compelling the interests of affording greater voter knowledge of candidates and greater candidate knowledge of the needs of the constituency, as we did in *Gilbert v. State.*

*Id.* at 955-56 (emphasis added) (footnotes omitted).

■ In the present case, given the importance of the right to seek elective public office, the right to both interstate and intrastate travel, and the right of qualified voters to cast their votes effectively, we conclude that the three-year durational residency re-

quirement for candidacy for city office in Kenai should be subjected to rigorous scrutiny under the sliding scale we employ under the equal rights clause of the state constitution.[7] As noted above, when it is determined that a high level of scrutiny is considered appropriate "we require that the asserted governmental interests be relatively more compelling and that the legislation's means-to-ends fit be correspondingly closer." *State v. Ostrosky,* 667 P.2d 1184, 1193 (Alaska 1983). Application of this test to the three-year durational residency requirement for candidacy for local office leads us to the conclusion that the Kenai Charter provision violates the equal rights clause of the Alaska Constitution.

We are not persuaded that ensuring familiarity between the electorate and candidates in a local election is sufficiently compelling to outweigh the significant burden the charter provision places on the fundamental rights at stake. And the longer the candidate has been in the community, the weaker the means-ends fit becomes. Three years is an unacceptably long time to burden the right of local voters to make their own decisions.[8]

---

7. Freas has asked us to re-examine the position we adopted regarding the right to vote in *Vogler v. Miller,* 651 P.2d 1 (Alaska 1982). In *Vogler* we held that "It is well accepted that in ballot access cases, the state must show a compelling interest in order to justify infringements of these rights." *Id.* at 3. We noted that "Both the right to vote and the right to associate freely in pursuit of political beliefs are fundamental." *Id.* We are not persuaded that *Vogler* should be modified in any respect.

   In regard to the right to seek public office, we need not decide whether this right is "fundamental"; it is sufficient for purposes of our analysis under *Ostrosky* that we deem this right to be of extreme importance, one that approaches a fundamental right classification.

   Concerning the rights of both interstate and intrastate travel, our decisions reflect the high degree of significance we have accorded these rights and the concomitant degree of scrutiny with which we have examined durational residency requirements that burden these rights. *Alaska Pac. Assurance Co. v. Brown,* 687 P.2d 264 (Alaska 1984); *Thomas v. Bailey,* 595 P.2d 1, 16 (Alaska 1979) (Rabinowitz, J., concurring); *Hicklin v. Orbeck,* 565 P.2d 159, 162 (Alaska 1977), *rev'd on other grounds,* 437 U.S. 518, 98 S.Ct. 2482, 57 L.Ed.2d 397 (1978); *State v. Wylie,* 516 P.2d 142, 146-47 (Alaska 1973); *State v. Van Dort,* 502 P.2d 453, 454 (Alaska 1972).

8. We are inclined to consider problematic any period longer than one year. Other jurisdictions have generally viewed with skepticism durational residency requirements of longer than one year for local elections. *See Alexander v. Kammer,* 363 F.Supp. 324 (E.D.Mich.1973) (five year city residency and two year district residency for city commissioner); *Wellford v. Battaglia,* 343 F.Supp. 143 (D.Del.1972), *aff'd,* 485 F.2d 1151 (3rd Cir.1973) (five years for mayor); *McKinney v. Kaminsky,* 340 F.Supp. 289 (M.D.Ala.1972) (five years for county commissioner); *Bolanowski v. Raich,* 330 F.Supp. 724 (E.D.Mich.1971) (three years for mayor); *Thompson v. Mellon,* 9 Cal.3d 96, 107 Cal.Rptr. 20, 507 P.2d 628 (1973) (two years for city council); *Zeilenga v. Nelson,* 4 Cal.3d 716, 94 Cal.Rptr. 602, 484 P.2d 578 (1971) (five years for county supervisor); *Camara v. Mellon,* 4 Cal.3d 714, 94 Cal.Rptr. 601, 484 P.2d 577 (1971) (three years for city council); *Bay Area Women's Coalition v. City & County of San Francisco,* 78 Cal.App.3d 961, 144 Cal.Rptr. 591 (1978) (five years for city board or commission); *Cowan v. City of Aspen,* 181 Colo. 343, 509 P.2d 1269 (1973) (three years for municipal offices); *Bird v. City of Colorado Springs,* 181 Colo. 141, 507 P.2d 1099 (1973) (five years for city councilman and mayor); *Board of Comm'ns of Sarasota County v. Gustafson,* 616 So.2d 1165 (Fla.App.1993) (county sheriff). *But see Langmeyer v. State,* 104 Idaho 53, 656 P.2d 114 (1982) (five-year requirement for county planning &

## III. *CONCLUSION*

Section 2–1(b) of the Kenai City Charter is incompatible with the equal rights clause of the state constitution. The superior court's judgment upholding Section 2–1(b)'s constitutionality is REVERSED.

zoning commission had rational basis); *State ex rel. Brown v. Summit County Bd. of Elections*, 46 Ohio St.3d 166, 545 N.E.2d 1256 (1989) (two-year requirement for city council had rational basis).

One year requirements have generally survived constitutional scrutiny. *See City of Akron v. Beil*, 660 F.2d 166 (6th Cir.1981) (city council); *MacDonald v. City of Henderson*, 818 F.Supp. 303 (D.Nev.1993) (city council); *Joseph v. City of Birmingham*, 510 F.Supp. 1319 (E.D.Mich.1981) (city commissioner); *Civil Serv. Merit Bd. of Knoxville v. Burson*, 816 S.W.2d 725 (Tenn.1991) (municipal civil service board candidates); *White v. Manchin*, 173 W.Va. 526, 318 S.E.2d 470 (1984) (state senator). *But see Bruno v. Civil Serv. Comm'n of Bridgeport*, 192 Conn. 335, 472 A.2d 328 (1984) (one-year requirement for recreational supervisor candidates failed strict scrutiny).