656 P.2d 114

Leslie LANGMEYER, Plaintiff-Appellant,

v.

STATE of Idaho, and Bonner County, a
political subdivision,
Defendants-Respondents.

No. 13610.

Supreme Court of Idaho.

Dec. 23, 1982.

Stephen L. Pevar, Denver, Colo., for plaintiff-appellant.

David H. Leroy, Atty. Gen., Lynn E. Thomas, Sol. Gen., Robie G. Russell, Deputy Atty. Gen., Boise, for defendants-respondents.

DONALDSON, Justice.

Plaintiff-Appellant Langmeyer, a three-year resident of Bonner County, sought appointment to the Bonner County Planning and Zoning Commission.[1] Because Langmeyer did not meet the five-year residency requirement prerequisite for appointment, I.C. § 67–6504, he brought an action for declaratory judgment requesting that the five-year residency requirement of that provision be declared unconstitutional. The district court denied plaintiff's motion for summary judgment and later granted summary judgment in favor of the State. Langmeyer appeals alleging that the five-year residency requirement of I.C. § 67–6504 violates both the equal protection and due process clauses of the United States and Idaho Constitutions.

I.

We first consider the challenges to the five-year durational residency requirement of the statute which are based upon the equal protection clauses of the United States and Idaho Constitutions. U.S.Const. amend. XIV; ID.Const. art. 1, § 2. "[W]e must examine the character of the classification in question, the importance of the individual interests at stake, and the state interests asserted in support of the classification." *Illinois State Board of Elections v. Socialist Workers Party,* 440 U.S. 173, 183, 99 S.Ct. 983, 989, 59 L.Ed.2d 230 (1979); *see also Memorial Hospital v. Maricopa County,* 415 U.S. 250, 253–54, 94 S.Ct. 1076, 1079–80, 39 L.Ed.2d 306 (1974); *Dunn v. Blumstein,* 405 U.S. 330, 335, 92 S.Ct. 995, 999, 31 L.Ed.2d 274 (1972).

The statute classifies those eligible for appointment on the basis of their length of residency in the county. Only those who have resided in the county for five or more years are eligible for appointment. Langmeyer argues that the classification impinges upon his constitutionally protected right to travel. He argues that the law imper-

---

1. The "Local Planning Act of 1975," Title 67, Ch. 65, I.C., provides for the creation of a planning and zoning commission by governing boards (city councils or boards of county commissioners). The commission may exercise all of the powers required and authorized by the Act excluding the authority to adopt ordinances. I.C. § 67–6504. Alternatively, the governing board, may choose not to create such a commission and itself perform the functions of the commission. *Id.* The commission is investigative and advisory in nature. *E.g.,* I.C. §§ 67–6507, –6508, –6509. The commission's principal functions are to investigate and prepare recommendations for a comprehensive plan (concerning land use) and any subsequent amendments to such a plan to the governing board. I.C. §§ 67–6508, –6509. The commission is tasked to recommend a comprehensive plan, I.C. § 67–6509, which "shall consider *previous* and existing *conditions* . . . ." I.C. § 67–6508 (emphasis added). The commission recommends approval or denial of permits to the governing board. I.C. § 67–6519. In performing their duties, the members of the commission may receive mileage and per diem compensation as provided by the governing board. I.C. § 67–6504(a).

missibly burdens his fundamental right to travel in violation of the equal protection clauses and therefore must be subjected to strict scrutiny. If this standard were applied, the State would have to demonstrate that the classification was necessary to further a compelling State interest. *See, e.g., Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). We are not convinced that this strict standard need be applied for the reasons set forth below.

The nature of the right to travel vis-a-vis durational residency requirements has been considered by many courts. *E.g., Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975) (divorce laws); *Memorial Hospital v. Maricopa County,* 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974) (nonemergency medical care); *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972) (right to vote); *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (welfare benefits); *Beil v. City of Akron,* 660 F.2d 166 (6th Cir.1981) (upholding durational residency requirement of one year for candidacy); *Hawaii Boating Association v. Water Transportation Facilities Division, Department of Transportation, State of Hawaii,* 651 F.2d 661 (9th Cir.1981) (boat mooring rates); *Wellford v. Battaglia,* 485 F.2d 1151 (3d Cir.1973) (five-year durational residency requirement for mayor); *Sununu v. Stark,* 383 F.Supp. 1287 (D.N.H. 1974) (seven-year durational residency requirement for state senator), *aff'd mem.,* 420 U.S. 958, 95 S.Ct. 1346, 43 L.Ed.2d 434 (1975); *Alexander v. Kammer,* 363 F.Supp. 324 (D.Mich.1973) (durational residency requirement for city commissioner); *Chimento v. Stark,* 353 F.Supp. 1211 (D.N.H.), *aff'd mem.,* 414 U.S. 802, 94 S.Ct. 125, 38 L.Ed.2d 39 (1973) (seven-year durational residency requirement for governor); *Walker v. Yucht,* 352 F.Supp. 85 (D.Del.1972) (three-year durational requirement for state representative); *McKinney v. Kaminsky,* 340 F.Supp. 289 (D.Ala.1972) (five-year durational residency requirement for county commissioner); *Mogk v. City of Detroit,* 335 F.Supp. 698 (D.Mich.1971) (three-year durational residency requirement for city charter revision commission); *Thompson v. Mellon,* 9 Cal.3d 96, 507 P.2d 628 (1973) (two-year durational residency requirement for city councilmen); *Bay Area Women's Coalition v. City and County of San Francisco,* 78 Cal.App.3d 961, 144 Cal.Rptr. 591 (1978) (five-year durational residency requirement for appointive position); *Cowan v. City of Aspen,* 181 Colo. 343, 509 P.2d 1269 (1973) (three-year durational residency requirement for municipal candidates); *Castner v. Clerk of City of Grosse Pointe Park,* 86 Mich.App. 482, 272 N.W.2d 693 (1978) (durational residency requirement for municipal judge); *Hatcher v. Bell,* 521 S.W.2d 799 (Tenn.1974) (five-year durational requirement for circuit judge); *Lawrence v. City of Issaquah,* 84 Wash.2d 146, 524 P.2d 1347 (1974) (one-year durational residency requirement for city councilman).

This Court has previously accepted the premise that the nature of the right to travel is fundamental. *Miller v. Stauffer Chemical Co.,* 99 Idaho 299, 302, 581 P.2d 345, 348 (1978). *See also, Jones v. Helms,* 452 U.S. 412, 101 S.Ct. 2434, 2439, 69 L.Ed.2d 118 (1981); *Shapiro v. Thompson,* 394 U.S. 618, 629–31, 89 S.Ct. 1322, 1329, 22 L.Ed.2d 600 (1969); *United States v. Guest,* 383 U.S. 745, 757–59, 86 S.Ct. 1170, 1177–79, 16 L.Ed.2d 239 (1966). Although considered fundamental, classifications which impact on this right to travel are not necessarily subjected to strict scrutiny under the equal protection doctrine. *See Sosna v. Iowa,* 419 U.S. 393, 406, 95 S.Ct. 553, 560–61, 42 L.Ed.2d 532 (1975); *Memorial Hospital v. Maricopa County,* 415 U.S. 250, 258–59, 94 S.Ct. 1076, 1082–83, 39 L.Ed.2d 306 (1974); *Shapiro v. Thompson,* 394 U.S. 618, 638 n. 21, 89 S.Ct. 1322, 1333, 22 L.Ed.2d 600 (1969).

In *Shapiro v. Thompson, supra,* the United States Supreme Court considered a constitutional challenge to statutes which established minimum residency requirements before individuals could qualify for welfare benefits. The *Shapiro* Court found the statutes unconstitutional. The statutes impermissibly penalized the right to travel and the asserted governmental interests were not compelling. The Court stated

that "in moving from State to State ... appellees were exercising a constitutional right, and any classification which serves to penalize the exercise of that right, unless shown to be necessary to promote a *compelling* governmental interest, is unconstitutional." *Shapiro v. Thompson, supra* at 634, 89 S.Ct. at 1331. The *Shapiro* Court did not establish that any burden on the right to travel was per se unconstitutional. *Memorial Hospital v. Maricopa County, supra* at 256–57, 94 S.Ct. at 1081; *Shapiro v. Thompson, supra* at 638, n. 21, 89 S.Ct. at 1333.

Later, in *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972), the Court applied strict scrutiny to durational residency requirements which acted as a penalty on the exercise of the right to travel of potential voters. Then in *Memorial Hospital v. Maricopa County,* 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974), the Court held unconstitutional a statute which conditioned receipt of nonemergency medical care by an indigent on the basis of a durational residency requirement. The statute created an invidious classification which was unconstitutional as a violation of equal protection. However, the *Memorial* Court explained the broad language of *Shapiro* with respect to durational residency requirements and the right to travel:

> "Although any durational residence requirement impinges to some extent on the right to travel, the Court in *Shapiro* did not declare such a requirement to be *per se* unconstitutional. The Court's holding was conditioned ... by the caveat that some 'waiting-period *or* residence requirements ... may not be penalties upon the exercise of the constitutional right of interstate travel.' The amount of impact required to give rise to the compelling-state-interest test was not made clear. The Court spoke of the requisite impact in two ways. First, we considered whether the waiting period would deter migration .... Second, the Court considered the extent to which the residence requirement served to *penalize* the exercise of the right to travel." *Memorial Hospital v. Maricopa County,* 415 U.S. 250, 256–57, 94 S.Ct. 1076, 1081, 39

L.Ed.2d 306 (1974) (citation and footnote omitted).

The denial of welfare benefits ("basic necessities of life") in *Shapiro,* the denial of the franchise to vote in *Dunn,* and the denial of nonemergency medical care to an indigent ("a basic necessity of life") in *Maricopa County* served as penalties to the right to travel. The statutes imposing the durational residency requirements were tested by the compelling state interest test and found unconstitutional.

In *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), the Supreme Court implicitly tested a one-year durational residency requirement before a divorce proceeding could be instituted in Iowa under the rational basis test and found it constitutional. The *Sosna* Court acknowledged that neither *Shapiro, Dunn* nor *Maricopa County* "intimated that the States might never impose durational residency requirements, and such a proposition was in fact expressly disclaimed." *Id.* at 406, 95 S.Ct. 560–61.

■ The State argues and we agree that it is unlikely that the durational residency requirement at issue would deter a potential new resident from migrating into Bonner County. One does not migrate in anticipation of possible appointment to a purely advisory nonpaying governmental commission. We agree with the district court's conclusion that the relationship between eligibility for appointment and the right to travel is indirect and remote. The durational residency requirement does not in the constitutional sense penalize the right to travel. *See Beil v. City of Akron,* 660 F.2d 166 (6th Cir.1981); *Hawaii Boating Association v. Water Transportation Facilities Division, Department of Transportation, State of Hawaii,* 651 F.2d 661 (9th Cir.1981); *Leech v. Veterans' Bonus Division Appeals Board,* 179 Conn. 311, 426 A.2d 289, 292 (1979); *Lambert v. Wentworth,* 423 A.2d 527, 532 (Me.1980). *But see Bay Area Women's Coalition v. City and County of San Francisco,* 78 Cal.App.3d 961, 144 Cal. Rptr. 591 (1978). While we acknowledge

the important functions served by commissions appointed by governing bodies within this state, eligibility for appointment to one of these commissions cannot be equated with the franchise to vote or attain the same level as a "basic necessity of life." Therefore, the statute is measured under the traditional equal protection test—whether the classification rationally furthers a legitimate state interest. *See, e.g., G.D. Searle & Co. v. Cohn,* 455 U.S. 404, 102 S.Ct. 1137, 71 L.Ed.2d 250 (1982); *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); *see also Leliefeld v. Johnson,* 104 Idaho 557, 659 P.2d 111, (1982); *Jones v. State Board of Medicine,* 97 Idaho 859, 555 P.2d 399 (1976), *cert. denied,* 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977). The classification does not forever foreclose eligibility but only serves to delay eligibility in rational furtherance of the State's asserted interest to insure familiarity with previous conditions, trends and problems in the area. I.C. § 67–6508.

While many courts have addressed the nature of candidacy and durational residency requirements for elective office, *see, e.g., Beil v. City of Akron,* 660 F.2d 166 (6th Cir.1981); *Chimento v. Stark,* 353 F.Supp. 1211 (D.N.H.) (three-judge panel), *aff'd mem.,* 414 U.S. 802, 94 S.Ct. 125, 38 L.Ed.2d 39 (1973); *Walker v. Yucht,* 352 F.Supp. 85 (D.Del.1972) (three-judge panel), few have addressed the analogous issues with respect to an appointive office. *See Green v. McKeon,* 335 F.Supp. 630 (D.Mich. 1971) (invalidating a two-year residency requirement for a city office, elective or appointive), *aff'd,* 468 F.2d 883 (6th Cir.1972) (questioned in *Beil v. City of Akron,* 660 F.2d 166 (6th Cir.1981)); *Bay Area Women's Coalition v. City and County of San Francisco,* 78 Cal.App.3d 961, 144 Cal.Rptr. 591 (1978) (applied strict scrutiny test to hold a five-year durational residency requirement imposed on an appointive office unconstitutional). We have not previously considered these issues.

The United States Supreme Court has not considered candidacy for elective office as a fundamental right. *Bullock v. Carter,* 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972). In *Bullock,* the Court considered the validity of statutory filing fees for candidates for elective office. The Court stated that the existence of barriers to candidacy of itself does not require close scrutiny. *Id.* at 142–43, 92 S.Ct. at 855–56. However, due to the impact of the barriers on voting rights, close scrutiny was required, *id.* at 144, 92 S.Ct. at 856, and the statute was held unconstitutional. *Id.* at 149, 92 S.Ct. at 859. Here, the position was appointive and therefore voting rights were not implicated. Less than strict scrutiny is required.

Appellant argues that it is irrational to permit election to the governing body as a county commissioner after one year of residency, I.C. § 34–617(2), while denying eligibility for appointment as a planning and zoning commissioner until after five years of residency, I.C. § 67–6504(a). The State argues that the durational residency requirement is rational to insure that the appointees have the opportunities to know the customs and the mores of the people and a working knowledge of the local area. The planning and zoning commission's recommendations should reflect the community's desires for orderly growth; one reasonable way to assure this happens is to require a five-year residency before appointment to the planning and zoning commission.

We are convinced that the five-year residency requirement for appointment to the planning and zoning board, is not an unreasonable or irrational means to effectuate the State interest of insuring that the potential appointee has been exposed to the issues and problems of planning and zoning and to afford the governing board an opportunity to gain firsthand knowledge about his or her character and expertise. *Cf. Lawrence v. City of Issaquah,* 84 Wash.2d 146, 524 P.2d 1347, 1349 (1974) (utilizing strict scrutiny a one-year residency requirement for elective office of city councilmen not unreasonable or unconstitutional). The five-year residency re-

quirement is also rationally related to the requirement under I.C. § 67–6508 that the planning commission in developing the comprehensive plan (concerning land use) consider the previous conditions of the area. The classification under the traditional rational basis test is not unconstitutional because it results in some inequality—mathematical precision is not required. *See, e.g., Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970); *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369 (1911); *Walker v. Yucht, supra.* The statute withstands challenges based upon equal protection.

Appellant contends that the residency requirement for planning commissioner (five years, I.C. § 67–6504(a)) is disproportionate as compared to the residency requirements for board of commissioners (one year, I.C. § 34–617(2)), state senator (one year, I.C. § 34–614(2)), and governor (two years, Id. Const., art. 4, § 3; I.C. § 34–607(2)) and therefore is invidiously discriminatory. Appellant cites *Turner v. Fouche,* 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970), for the proposition that there exists "a federal constitutional right to be considered for public service without the burden of invidiously discriminatory disqualifications." *Id.* at 362, 90 S.Ct. at 541. We accept this proposition; however, because we hold that there exists a rational basis between the classification and a legitimate state interest *a fortiori* the classification is not invidiously discriminatory.

## II.

We next review the challenges to the statute based upon the due process clauses of the United States and Idaho Constitutions. U.S. Const. amend. XIV; Id. Const. art. 1, § 13.

Appellant argues that the durational residency requirement violates due process in that it invades two fundamental rights: the right to travel and the right to seek public office. We disagree. Neither the right to travel has been penalized nor the right to seek public office has been foreclosed as we have previously pointed out. Fur-

thermore, candidacy for an appointive position is not a fundamental right.

Appellant argues that § 67–6504(a) creates an irrebuttable presumption that new residents are incapable of giving constructive advice on planning matters. We do not think so since the "Local Planning Act of 1975," Title 67, Ch. 65, I.C., provides a public forum at which interested persons can participate at meetings of the planning and zoning commission, I.C. §§ 67–6504(c), –6509, and at the hearings at which the recommendations of the commission are considered by the governing body. I.C. § 67–6511. Thus new residents are given a forum in which to offer advice and criticism.

Appellant argues that the classification is arbitrary and irrational and therefore must fall to a due process challenge. It is contended that the irrational nature of the classification is apparent when the five-year residency requirement is compared with the shorter residency requirement established for the elective offices of the governor, state senator, and county commissioner. However, we see a very basic difference between the position of planning and zoning commissioner and the other articulated offices. The first is an appointive position and the later group are elective offices which necessarily implicate the right of the electorate to vote. It is our conclusion that the classification does not violate the precepts of due process.

## III.

Attorney fees and costs denied.

Affirmed.

BAKES, C.J., and SHEPARD, J., and SCOGGIN, J. Pro Tem., concur.

BISTLINE, J., dissenting.

A beginning point for review should be an examination of the ratio decedendi of Judge Cogswell's district court opinion, which I see as being for the main part as follows:

"Plaintiff also compares his constitutional right to travel freely from state to

state to the denial of welfare payments to persons who had not established residence as considered in *Shapiro v. Thompson,* 394 U.S. 618 [89 S.Ct. 1322, 22 L.Ed.2d 600], and the denial of voting rights to persons who had not established residences as considered in *Dunn v. Blumstein,* 405 U.S. 330 [92 S.Ct. 995, 31 L.Ed.2d 274].

"The status of prospective members of a Planning and Zoning Commission is somewhat hybrid in nature. They are not candidates for elected public office, nor can they be considered employees of the County.

"However, under either classification it does not appear to the Court that the Plaintiff's Constitutional rights have been infringed upon.

"If the Plaintiff's status is considered closer in nature to a County employee rather than a public official, his right of freedom to travel does not reach the Constitutional protection of the right to vote as in *Dunn* or the right to receive vital government welfare benefits as in *Shapiro.*

"*McCarthy v. Philadelphia Civil Service Commission,* 424 U.S. 645, 96 S.Ct. 1154 [47 L.Ed.2d 366], involved the validity of a municipal ordinance requiring employees of a city to remain as residents of that city during such employment or be discharged.

"In reviewing *Shapiro* and *Dunn* the United States Supreme Court stated:

"'Neither in those cases, nor in any others, have we questioned the validity of a condition placed upon municipal employment that a person be a resident at the time of his application.

"'Nor did any of those cases involve a public agency's relationship with its own employees which, of course, may justify greater control than that over the citizenry at large.'

"In the event that Plaintiff's status could be considered closer to that of an elected public official, the authority of *Lawrence v. City of Issaquah* (Wash. [84 Wash.2d 146], 524 P.2d 1347), decides against Plaintiff's contention.

"In that case the Washington Supreme Court held that a durational residency requirement of One (1) year to run for city Councilman was not unreasonable to fulfill the compelling state interest of affording candidates for that office the opportunity to be exposed to the needs and problems of the people and at the same time to afford the people the opportunity to observe the candidate.

"The Washington Court relied on *Chimento v. Stark,* 353 F.Supp. 1211, which was affirmed without opinion by the United States Supreme Court, cited at 414 U.S. 802 [94 S.Ct. 125, 38 L.Ed.2d 39], upholding the Constitutional requirement of a Seven (7) year residence for the office of governor. The reasoning in *Lawrence* is that the right to public office cannot be equated to the right to vote in relationship to the right to travel. Candidacy for public office is quite different from voting, and one does not travel from one place to another contemplating that he will offer himself to the voters for election to office.

"It is the Court's conclusion that the relationship between an appointive member of an advisory board and the right to travel is '*indirect and remote.*'"

Although the Court's opinion does declare its approval of the final paragraph above set forth, it has upheld the validity of the statute on a much different basis. My problems with Judge Cogswell's opinion is for the most part the same problem which I encounter in the Court's resolution of the issue, *five years of non-eligibility* for what I perceive to clearly be *public* office, and which thereby arbitrarily and capriciously deprives the county of the benefits which would derive from the appointment of a highly-qualified person and at the same time deprives the individual of the right to serve the public. As George Washington once wrote:

"No man is a warmer advocate for proper restraints and wholesome checks in every department of government that I am; but I have never yet been able to discover

the propriety of placing it absolutely out of the power of men to render essential Services, because a possibility remains of their doing ill." [1]

In the case at bar, however, there is no suggestion from the record of any possibility of harm resulting from Langmeyer's appointment. The "ill" which presents itself in the controversy is a statute which sets no standards for office but simply requires five years of residence. Four members of the Court uphold the statute simply because they

> "are convinced that the *five-year residency* requirement for appointment to the planning and zoning board, *is not an unreasonable* or irrational means to effectuate the State interest of insuring that the potential appointee has been exposed to the issues and problems of planning and zoning and to afford the governing board an opportunity to gain firsthand knowledge about his or her character and expertise." (Emphasis added.)

for which proposition the Court relies upon the *one-year* requirement of *Lawrence v. Issaquah*. First of all, I find nothing in the record to support the supposition that such was the legislative thinking, let alone its intent. Whatever has convinced the Court is nothing more than its excuse for such legislation. More likely, one would surmise, if we are to engage in surmise, that some state legislator's constituents became disgruntled when his county commissioners seated a foreigner (and perhaps a Californian at that) on a Planning and Zoning board. And, secondly, becoming acutely aware of the short span during which a man walks this earth, and thus aware also of the rapidly diminishing time available in which to satisfy the soul by rendering public service, the five-year Idaho requirement as against the one-year requirement of *Issaquah* is seen as too large a gap to bridge simply by somehow *becoming* convinced. Had the legislature set a ten-year requirement I have no doubt that the Court would uphold it—finding itself perhaps doubly convinced.

In my view there is far less reason for requiring a period of residence for appointive office than there is for elective office. While it remains against the law to bribe oneself into an appointive office, nothing whatever prohibits a candidate from "buying" an elective office, or attempting the purchase. We have just witnessed a general election where some candidates spent millions of dollars in quest of their desire to be of public service—the millions, one would suppose, being spent in adherence to the philosophy that the electorate can thereby gain firsthand knowledge of character or expertise. In practice, however, the electorate may be easily misled or overwhelmed or both. Not so with an appointing board. In the first place *it has been elected,* and can be expected to use good judgment and careful scrutiny in the selection of those who show good qualifications for appointive office.

It comes with little grace upon the part of the legislature to dictate to the forty-four boards of county commissioners in the manner of appointing members to a planning and zoning board. Indeed, I am surprised that it was not Bonner County itself that raised the constitutional challenge. Its lack of active participation in the controversy is highly suggestive that although it might not have desired to appoint Langmeyer, such is not to say that it is enthralled at being told that it cannot do so. That choice should lay with the county commissioners, and in making that choice they should not be hindered with an unreasonable prohibition imposed by the legislature. To be remembered is that there will be other Bonner County residents who, but for a five-year residence requirement, the Commissioners would readily appoint to the Planning and Zoning Commission. What, for instance, of the person who has served for a number of years, and whose employment required his residence in some other state for one or two years—and then he returns to Idaho?

---

1. Letter to Bushrod Washington, November 10, 1787 in 29 *The Writings of George Washington,*

(Washington: United States Government Printing Office, 1939), p. 312.

Under the unyielding conscienceless statute, such a person would wait out another five years. The statute simply stands at odds with common sense. One would think that the legislature which so prescribed would be more mindful of the residential requirements placed on it, not by itself, but by the Constitution. All that the Framers required—one would suppose "to effectuate the state interest of insuring that the potential appointee has been exposed to the issues and problems of planning and zoning and to afford the governing board an opportunity to gain firsthand knowledge about his or her character and expertise"— was that a senator or representative at the time of his election be a citizen of the United States and an elector of the State of Idaho, and have *one year's residence* in the county chosen. Id. Const. Art. 3, § 6. Better-reasoned authority supports the logical view that such a five-year requirement is an unconstitutional penalty for exercising the right to migrate. One might well wonder how many of that distinguished group who comprised our constitutional convention had five years of Idaho residence. Perhaps all did, but they were certainly not demanding of five years in setting Constitutional requirements for public office.

A case particularly on point to the present one is *Bay Area Women's Coalition v. City and County of San Francisco,* 78 Cal.App.3d 961, 144 Cal.Rptr. 591 (1978), in which the court addressed the constitutionality of a requirement of five-year residency for appointment to a board or commission of the city. The court there analyzed *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972), which held that:

" '[F]reedom to travel throughout the United States has long been recognized as a basic right under the Constitution.' ... And it is clear that the freedom to travel includes the 'freedom to enter and abide in any State in the Union.' ... Obviously, durational residency laws single out the class of bona fide state and county residents who have recently exercised this constitutionally protected right, and penalize such travelers directly. We considered such a durational residence re-

quirement in *Shapiro v. Thompson,* ... [where] we concluded that since the right to travel was a constitutionally protected right, 'any classification which serves to *penalize* the exercise of that right, unless shown to be necessary to promote a *compelling* governmental interest, is unconstitutional.' " *Id.* at 339, 92 S.Ct. at 1001 (citations omitted) (emphasis added and in original).

The court then rejected the City's argument that this type of durational residency laws did not *penalize* the right to travel.

"The City argues that the right to travel is not impaired by its durational residency requirement because a person's motive to travel 'could hardly be affected' ... and that the present requirement was not *intended* to prevent respondents from moving from one place to another. This is the precise view which the United States Supreme Court has characterized as 'a fundamental misunderstanding of the law.' (*Dunn, supra,* 405 U.S. at p. 339, 92 S.Ct. at p. 1001.) The court explained that whether a statute seeks to or actually does deter travel is irrelevant: rather, *the compelling state interest test is triggered whenever the classification serves to penalize the exercise of that right.* ["Penalize" emphasized by the *Bay Area* court; other emphasis added.] ... In the present case, it is abundantly clear that Section 8.100(a) has a penalizing effect on those who have recently exercised their right to travel by barring them from appointment to public office.

. . . .

"The test, as it applies to such residence requirements, is well articulated by the United States Supreme Court in *Dunn v. Blumstein, supra,* 405 U.S. 330 at page 343, 92 S.Ct. at page 1003: 'It is not sufficient for the State to show that durational residence requirements further a very substantial state interest. In pursuing that important interest, the State cannot choose means that unnecessarily burden or restrict constitutionally pro-

tected activity. Statutes affecting constitutional rights must be drawn with "precision," and must be "tailored" to serve their legitimate objectives. And if there are other, reasonable ways to achieve those goals with a lesser burden on constitutionally protected activity, a State may not choose the way of greater interference. If it acts at all, it must choose "less drastic means." '

"In the instant case, the City sets forth as its interest, to 'insure that those individuals charged with the administration of public affairs would not only be acquainted with the city and its affairs but also would have a vested interest in the quality of their work product.'

"The argument that a durational residency requirement is necessary to further a compelling governmental interest in insuring a knowledge and understanding of local issues has been repeatedly rejected by the California Supreme Court.... As stated in *Johnson, supra, [Johnson v. Hamilton,* 15 Cal.3d 461, 470, 125 Cal. Rptr. 129, 134, 541 P.2d 881, 886 (1975) ] '[i]n terms of the education of the candidate, the argument that an extended residence is necessary for an understanding of local issues, while perhaps appealing in the abstract, nonetheless ignores the hard realities bearing on the relationship of candidate and issue. The knowledge, appreciation, and comprehension of the public issues and problems which a candidate either possesses or may reasonably be expected to acquire are so much the product of the variables of motivation, intelligence, maturity, experience, opportunity, and desire as to make any flat rule of physical residence appear immediately suspect and arbitrary. The congeries of individual capacities for observation, study, exposure, and growth are simply so different as to be inhospitable to a rigid fixed qualification tied to residence.' ... There is no material distinction in this respect between candidates for elective as opposed to appointive office. 'The imprecise nature of a durational res-

idence requirement which includes uninformed old time resident candidates but excludes well informed new resident candidates is clear. It is simply too crude and imprecise an instrument to effectuate this state interest.' ...

"Nor can the five-year residence requirement be justified as necessary to insure that an appointee have a 'vested interest' in the performance of his or her job. The concurrent residence requirement already contained in Section 8.100 provides, among other methods, a less drastic means of accomplishing the same objective.

"In summary, it appears that the five-year durational residence requirement of Section 8.100(a) is not justified as furthering any compelling governmental interest, nor does it constitute the ' "least restrictive method of achieving the desired purpose." ' ... We thus conclude that the provision denies respondents and other candidates for appointive office similarly situated, the equal protection of the laws." *Bay Area Women's Coalition,* 144 Cal.Rptr. at 594–96 (citations omitted).

*Bay Area* is sound and is not only the authority Idaho residents moving their residence to California or elsewhere would accept as fair and reasonable, but is *the* authority which this Court today should be following. It is but a logical and proper application and extension of *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972).