825 P.2d 493

**Sharil TIFFANY, Plaintiff–Appellant,**

v.

**CITY OF PAYETTE, Defendant–Respondent.**

No. 18881.

Supreme Court of Idaho,
Boise December 1991 Term.

Jan. 30, 1992.

R. Brad Masingill, Weiser, for plaintiff-appellant.

Penland & Munther, Boise, for defendant-respondent. Paul S. Penland argued.

## BACKGROUND

McDEVITT, Justice.

Appellant, Sharil Tiffany, was hired by the City of Payette in early 1986. She worked in the police department, where her duties included general secretarial and receptionist duties, as well as matron duties. Matron duties included escorting female and minor prisoners. Although matron duties could result in appellant being called upon twenty-four hours a day, appellant had never been called upon to perform such duties.

When appellant was hired, the City of Payette had an employee policy manual in effect. This manual had a residency requirement that read "[a]ll employees shall reside within city limits. New employees shall live within city limits within sixty days of date of employment." *Payette, Idaho, Personnel Policy & Procedures,* art. 2, § 2 (1975). When Tiffany was hired, she was given a copy of this manual to read, and signed a statement that indicated that she had received, read, and understood the policy manual.

After appellant was hired, this manual was revised, and a new manual was issued in 1987. The 1987 manual had a residency requirement that read "[a]ll new classified employees shall reside within one mile of the Payette City limits in Payette County." *Payette, Idaho, Personnel Handbook,* art. 2, § 6 (1987). Testimony indicated that a Payette employee is considered to be "clas-

sified" after the probationary period elapses.

The Chief of Police testified that prior to the 1987 manual coming into effect, three police officers were in violation of the 1975 residency requirement, but were not terminated. When the new 1987 residency requirement became effective, two of these officers came into compliance with the manual because they lived within one mile of the city limits. The other officer was still in violation of this requirement. He later resigned when the Chief told him that he would have to comply with the requirement.

At the time appellant was hired, she was living in Ontario, Oregon. She testified that she moved to Payette in April of 1986. From this date until about November of 1986, she testified that she lived in Payette but still maintained her Ontario residence. She stated that she spent two to three nights a week in Payette. From approximately November of 1986 to approximately June of 1987, she testified that she lived in Ontario. In June of 1987, Tiffany testified that she entered into a lease for a home in Payette. Finally, around October of 1987, she said that she began living full-time in Ontario.

During appellant's employment with the City of Payette, the Chief testified that he had several conversations with her regarding the residency requirement.

During the morning of January 7, 1988, the Chief of Police testified that he was directed by the Mayor of Payette to suspend appellant with pay and notify her of a hearing date. That same day, the Chief directed an officer to deliver the notice of suspension and notice of hearing to appellant.

This notice read in full:

NOTICE OF SUSPENSION AND NOTICE OF HEARING

To: SHARIL TIFFANY
Clerk
Payette Police Department
Payette, Idaho 83661

This is to advise you that effective January 7, 1988, at the hour of 10:00 a.m., you are suspended from your position as Office Clerk for the Payette City Police Department, of Payette, Idaho. Your suspension is with pay until a hearing can be held concerning your continued employment with the City.

This shall also serve as Notice that a hearing has been scheduled for Wednesday, January 13, 1988, at the hour of 4:00 p.m., at the Payette City Hall, 700 Center Avenue, Payette, Idaho 83661.

The following issues will be raised at the hearing:

1. Failure to comply with the City Policy requiring residence within the city limits;

2. Such other issues as may be raised by yourself, the Mayor, or the City Council.

You are further advised that if sufficient information is found to support the allegations, your employment with the City may be terminated. If insufficient information is found, the matter may be dismissed.

You have the right to have an attorney of your choosing appear with you at all stages in the proceedings.

City of Payette,

By /s/_____
Dick Butcher—Mayor

The hearing was held on January 13, 1988. After hearing the testimony of the Chief of Police and appellant, the Payette City Council voted to terminate appellant's employment.

PROCEDURE

On April 24, 1989, appellant filed an amended complaint against the City of Payette. In it, she listed three causes of action: (1) wrongful termination of employment; (2) deprivation of civil rights; and (3) violation of substantive due process. After a trial, the district court dismissed with prejudice the complaint and awarded costs to the City of Payette. In its memorandum decision, the district court found the 1987 manual to be applicable, and it found the residency requirement for city employees

to be constitutional, having a rational relationship to legitimate interests of the city. It also found that the City of Payette had not waived enforcement of the residency requirement because there was no showing of intent to waive the requirement, and it noted that the doctrine of laches and estoppel is generally not invoked against a municipality. The district court further found that the facts necessary to support estoppel, in accordance with *Boesiger v. Freer*, 85 Idaho 551, 381 P.2d 802 (1963), were not present. The district court also found that the employment contract between the City of Payette and appellant had been terminated in the proper manner in that two prior written warning notices were not required in order to terminate appellant for her conduct. Finally, the district court ruled that because two prior written notices were not required, appellant's claim under 42 U.S.C. § 1983, and her claim for damages were disposed. Judgment for the City of Payette was filed on June 21, 1990.

On June 15, 1990, appellant filed a motion to amend findings pursuant to I.R.C.P. 52(b), 59(a), 59(e), 60(a), and 60(b). In it, appellant contended that the district court had misinterpreted the policy manual, asked the district court to "reconsider whether residency is the type of problem which cannot be cured," and asked the district court to "realize that the organization of section 5 [of the policy manual] gives rise to an ambiguity in interpretation of the policy terms" and that ambiguities due to the organization which the drafters gave the manual should be construed against the drafters.

On August 14, 1990, the City of Payette filed its objection to the motion to amend. In it, the City of Payette argued that the court's interpretation of the policy manual was correct, that "curing" the residency problem was not an issue because appellant never requested reinstatement, and that construing any ambiguity in the policy manual against the City of Payette would be inappropriate since it was the employees of the city who drafted the manual and as

such, the appellant could have elected to participate in that process.

The hearing on the motion to amend was held on August 17, 1990. After hearing argument, the district court denied the motion. Appellant then filed notice of appeal and amended notice of appeal on August 22, 1990. She appeals from "that certain Judgment made and entered in the above entitled Court on the 7th day of June,[1] pursuant to a memorandum decision issued by the Court, and an Order entered by the Court on the 17th day of August, denying Plaintiff's Motion to Amend." The notice was filed pursuant to I.A.R. 11(a)(1).

The issues on appeal are:

I. Residency Requirement
   A. Was the appellant in violation of the residency requirement?
   B. Does the residency requirement violate equal protection or the constitutional right to interstate travel?

II. Did the City of Payette follow the proper procedures in terminating the appellant?

III. Did the district court err in finding that the city did not waive enforcement of the residency requirement, and in not applying the doctrine of estoppel against the city?

IV. Did the district court err in ruling that disposition of the contract issue disposed of appellant's 42 U.S.C. § 1983 claim?

I.

THE RESIDENCY REQUIREMENT

A. *Was appellant in violation of the residency requirement?*

█ The district court found that appellant "was in total breach of the [residency] requirement in December, 1987 and January, 1988." It was on January 7, 1988, that the notice of suspension and notice of hearing was delivered to appellant. Our standard here is that "[f]indings of fact shall not be set aside unless clearly erroneous." I.R.C.P. 52(a). Appellant testified that she began living full-time in Ontario around

---

1. The Memorandum Decision was dated June 7, 1990.

October of 1987. The district court's finding of fact that appellant was in violation of the residency requirement is therefore not clearly erroneous and we will not set it aside.

B. *Does the residency requirement violate equal protection or the constitutional right to interstate travel?*

Appellant contends that the City of Payette residency requirement is violative of the equal protection guarantee and the right to travel, and she cites to the Fifth and Fourteenth Amendments to the United States Constitution. As to equal protection, she contends that the requirement does not have a rational relationship to any legitimate interests of the City of Payette. As to the right to travel, she contends that the requirement cannot pass muster under the strict scrutiny standard, and she cites to *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), in support of her contention that this high standard must be applied to the Payette requirement.

In *Shapiro,* the United States Supreme Court affirmed three lower court decisions holding as unconstitutional statutes which denied welfare assistance to residents who had not resided within their jurisdiction for at least one year *immediately preceding* their applications for such assistance. The Court held that "[s]ince the classification here touches on the fundamental right of interstate movement, its constitutionality must be judged by the stricter standard of whether it promotes a *compelling* state interest. Under this standard, the waiting-period requirement clearly violates the Equal Protection Clause." *Shapiro,* 394 U.S. at 638, 89 S.Ct. at 1333. (Emphasis in original.)

The emphasis we place on the phrase "immediately preceding" goes to the distinction between durational and continuing residency requirements. Thus, in *Shapiro* the Court recognized, in regard to the three statutes in question, that "[t]he residence requirement and the one-year waiting-period requirement are distinct and independent...." *Shapiro,* 394 U.S. at 636, 89 S.Ct. at 1332. Additionally, in *McCarthy v. Philadelphia Civil Serv. Comm'n,* 424 U.S. 645, 647, 96 S.Ct. 1154, 1155, 47 L.Ed.2d 366 (1976), the United States Supreme Court recognized that it has "previously differentiated between a requirement of continuing residency and a requirement of prior residency of a given duration."

We have also previously recognized the distinction between durational and continuing residency requirements. *Langmeyer v. State,* 104 Idaho 53, 656 P.2d 114 (1982). In *Langmeyer,* we dealt with a durational residency requirement (five-year residency prerequisite for appointment to the Bonner County Planning and Zoning Commission), and noted that "any durational residence requirement impinges to some extent on the right to travel...." *Langmeyer,* 104 Idaho at 56, 656 P.2d at 117 (quoting *Memorial Hospital v. Maricopa County,* 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974)).

■ The City of Payette residency requirement, which requires its employees to live within a certain area *during* their employment, is not a durational residency requirement. Thus, under the *Langmeyer* rationale, the strict scrutiny standard does not apply. Since the City of Payette residency requirement is a continuing residency requirement, and since neither Idaho law nor United States law applies the strict scrutiny standard to such requirements, the rationale basis standard is the proper inquiry.

■ At trial, and on appeal, the City of Payette has asserted several bases for the residency requirement, including having its employees mix in the community and contribute to the Payette tax base. In addition, from the minutes of the Payette City Council meeting wherein the 1987 manual was adopted, it is apparent that at least some members of the council were concerned about response time. We find all of these reasons to be rational bases for the type of residency requirement before us. *See Simien v. City of San Antonio,* 809 F.2d 255, 257 (5th Cir.1987), wherein the Fifth Circuit Court of Appeals stated that "[m]embers of the San Antonio City Coun-

cil expressed at least two legitimate government purposes for the residency rule: 1) those paid with tax dollars should support the tax base; and, 2) city employees should be part of the community they serve in order to understand and identify with its problems. These purposes are sufficient to support San Antonio's residency rule."

█ Finally, a continuing residency requirement does not impact the fundamental right to travel. In *McCarthy*, 424 U.S. at 646–47, 96 S.Ct. at 1155 (citations and footnote omitted), the United States Supreme Court considered whether the appellant's "constitutionally recognized right to travel interstate as defined in *Shapiro* is impaired," and concluded that it was not, saying that "[i]n this case appellant claims a constitutional right to be employed by the city of Philadelphia *while* he is living elsewhere. (Emphasis in original.) There is no support in our cases for such a claim." And, in *Langmeyer*, we stated that "some 'waiting period *or* residence requirements ... may not be penalties upon the exercise of the constitutional right of interstate travel.'" *Langmeyer*, 104 Idaho at 56, 656 P.2d at 117 (quoting *Memorial Hospital*, 415 U.S. at 256–57, 94 S.Ct. at 1081 (1974)). (Emphasis in original.)

Therefore, we hold that the rational basis standard is the proper standard to be applied to *continuing* residency requirements, and that the fundamental right to travel is not implicated by this type of residency requirement. We further conclude that the City of Payette's continuing residency requirement does not violate the equal protection guarantees.

## II.

### DID THE CITY OF PAYETTE FOLLOW PROPER PROCEDURES IN TERMINATING APPELLANT?

█ The thrust of appellant's argument here is that she was entitled to receive two written notices prior to her termination. The district court ruled that it "cannot read that requirement into the 1987 Manual." [2] The court went on to say:

> Under the 1987 Manual, the City has three disciplinary actions for improper employee conduct: 1) warn the employee, 2) suspend the employee or 3) terminate the employee. If the employee is terminated then the employee must be given a notice of a hearing for that purpose which states the grounds upon which the termination will be sought. This is what was done in this case. The City granted ... Tiffany a hearing which satisfied the requirements of the contract and of due process. Procedural due process requires that "a person whose protected rights are being adjudicated, is afforded an opportunity to be heard in a timely manner." *Powers v. Canyon County*, 108 Idaho 967, 703 P.2d 1342 (1985); *Giacobbi v. Hall*, 109 Idaho 293, 707 P.2d 404 (1985).

We hold that the district court correctly interpreted the procedure section of the 1987 policy manual, and that the notice of suspension and notice of hearing was sufficient to satisfy due process.

█ However, our holding in no way applies to the hearing itself—the manner in which it was conducted and the fairness of the deliberation by the city council which preceded its announcement of termination. From the transcript of the Sharil Tiffany hearing, counsel for appellant objected to two aspects of the deliberation process: (1) the presence of the Mayor at the deliberation, and (2) the refusal of the city council members to answer whether they had previously discussed the Tiffany matter or had any knowledge of the matter beforehand.

---

**2.** The pertinent section of the 1987 policy manual reads:

5.1 Gross neglect of duty or refusal to comply with management's lawful instructions, conviction of any felony or any misdemeanor involving moral turpitude, abuse or mistreatment of members of the public, intemperance or anything in employees personal life that renders them unable to perform their duties shall be cause for warning, suspension, or dismissal; unless said instructions are injurious to employee, general health, safety or contrary to the law.

In this regard, the following exchange took place:[3]

TF: Alright. A few questions I have your honor—I'm sorry Mr. Mayor.

DB: That's fine.

TF: Is to that the exact procedures here now—I understand you are starting to ask ah—Ms. Tiffany some questions are we now in the hearing?

DB: That's correct.

TF: Gathering information—Who will make the determination of ah retaining, firing or what is it you're doing?

DB: The city council members. This is an administrative board hearing of the city which constitutes the city council members and the mayor. Ah what will happen precisely for your edification will be, council will receive information to start with regard to the suspension of Mrs. Tiffany. Ah we will have a dialogue between ourselves and at which time the council, because we have called a special meeting will then be able to make a determination ah on the information which they've received, if they so desire. The council obviously could table the information or table the proceeding and ask for more information be submitted or they—its basically up to them to make a determination at, the end of the hearing of what they'd like, to do and that's why we have called a special meeting and that's why we've moved to the executive session—mostly understand that nothing in here will transpire—no decisions will be made in executive session because we would have to go back into the public forum to allow that to be done and basically, what will happen is our city attorney will (will) direct question and discussion points and then ah and calling upon the Chief of Police who's most admittedly involved with the person because he is the department head for ah Ms. Tiffany. So that will be kind of the procedure its ah—what we try to find out is the most information that we can so the council can make the best possible decision on the information available to it, so feel free at any time to stop us or discuss something we ah well the rules are somewhat different in that it is a hearing and our primary purpose is to have most the information available so that the council can make a good intelligent decision on the personnel problem so that's where we're at.

TF: Okay.

DB: Do you have any questions of me?

TF: Yes I do, now will you the Mr. Mayor be voting on this matter?

DB: No, the mayor does not vote in Idaho, only unless the council is equally divided and then in this situation then will only have five members, if the members who vote to come ah there will probably be an equal division, so the mayor only votes in case of a tie and so I don't anticipate that type of thing.

TF: Will you be discussing the matter with the council?

DB: Yes, the mayor is obviously here as chairman of the council and (inaudible) any discussion that's going on with the mayor (inaudible) but he does not vote.

TF: Alright! Do you feel that your position in the chain of command with the city that of being the supervisor to the chief of police who's the supervisor to Ms. Tiffany puts you in any kind of a conflict of interest here?

BO: (inaudible) doesn't have to answer that (inaudible) dialogue ...

TF: In that case I would have to for the record object to the presence of Mayor due to the fact of his chain of command and any influence he may have on the city council if they are here as fact finders to make a determination and I would further request any of the ah city council members to advise if they have discussed this matter or have any knowledge of this matter ah prior to this date. I direct that question to the city council mem-

---

3. People involved in the exchange:
   "TF" is Tim Felton. Mr. Felton was the attorney representing Sharil Tiffany at the hearing.
   "DB" is Dick Butcher. Mr. Butcher was the Mayor of Payette.

"BO" is Bert Osborn. Mr. Osborn was the City Attorney.

bers. Have you heard of the matter before ... or

BO: And I'm going to instruct them not to respond to that also.

TF: Then again I would have to object because failure to answer that question results in a very strong possibility that this has been discussed before and that would then make the fact finder nonobjective and without an objective hearing we do not feel that there could be a fair hearing for an objective entire proceeding.

BO: Okay!

DB: So noted. Mr. Felton do you have any other questions?

In the present case, we decline the invitation to rule on these issues. The issues were not presented in the trial court and, thus, were not preserved. *Kinsela v. Department of Fin.*, 117 Idaho 632, 790 P.2d 1388 (1990); *Gamble v. Dunwell*, 1 Idaho 268, 23 Pac. States Reports (1869).

### III.

WAS THE DISTRICT COURT CORRECT IN FINDING THAT THE CITY DID NOT WAIVE ENFORCEMENT OF THE RESIDENCY REQUIREMENT AND IN NOT APPLYING THE DOCTRINE OF ESTOPPEL AGAINST THE CITY?

██ The elements of equitable estoppel as related to the party estopped are:

1. Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert;

2. Intention, or at least expectation, that such conduct shall be acted upon by the other party; and

3. Knowledge, actual or constructive, of the real facts.

As related to the party claiming estoppel, the elements are:

1. Lack of knowledge and of the means of knowledge of the truth as to the facts in question;

2. Reliance upon the conduct of the party estopped; and

3. Action based thereon of such a character as to change his position prejudicially.

*Boesiger v. Freer*, 85 Idaho 551, 559, 381 P.2d 802, 806 (1963) (quoting *Charpentier v. Welch*, 74 Idaho 242, 259 P.2d 814 (1953)).

██ The record clearly shows that appellant knew of the residency requirement and understood it. This fact makes the doctrine of estoppel inapplicable to this case.

"Waiver is a voluntary, intentional relinquishment of a known right or advantage." *Brand S Corp. v. King*, 102 Idaho 731, 734, 639 P.2d 429, 432 (1981). Nothing in the record shows that the City of Payette voluntarily and intentionally failed to enforce the residency requirement.

### IV.

DID THE DISTRICT COURT ERR IN RULING THAT DISPOSITION OF THE CONTRACT ISSUE DISPOSED OF APPELLANT'S 42 U.S.C. § 1983 CLAIM?

██ The district court ruled that "[t]he court's ruling that two prior written warning notices are not required to be sent to Tiffany prior to her termination disposes of her claim under 42 U.S.C. § 1983 and her claim for damages." On appeal, appellant argues that a contractual breach is not a prerequisite to appellant's 42 U.S.C. § 1983 claim, that this Court, in *Spero v. Lockwood*, 111 Idaho 74, 721 P.2d 174 (1986), declared wrongful termination to be against the public policy of this state, that appellant had a property right to her job with the City of Payette, and that there exists a covenant of good faith and fair dealing in all employment contracts.

This court did not hold in *Spero* that wrongful termination violated the public policy of this state. Instead, we held that "[u]nless an employee is hired pursuant to a contract which specifies the duration of the employment or limits the reasons for which an employee may be discharged, the

employment is at the will of either party and the employer may terminate the relationship at any time for any reason without incurring liability." *Spero,* 111 Idaho at 75, 721 P.2d at 175. According to the terms of the policy manual, as well as the testimony at trial, appellant was a "permanent" employee of the City of Payette. The procedures for terminating a permanent employee of the City of Payette, as written in the policy manual, applied to the appellant. "To have a property interest in employment in Idaho, the employee must have more than a mere hope of continued employment." *Harkness v. City of Burley,* 110 Idaho 353, 356, 715 P.2d 1283, 1286 (1986). "An employee 'hired pursuant to a contract which specifies the duration of the employment, *or* limits the reasons for which the employee may be discharged' is not an employee 'at will.'" *Harkness,* 110 Idaho at 356, 715 P.2d at 1286 (quoting *MacNeil v. Minidoka Memorial Hosp.,* 108 Idaho 588, 589, 701 P.2d 208, 209 (1985)). (Emphasis in original.) A person shall not "be deprived of life, liberty or property without due process of law." Idaho Const. art. I, § 13; U.S. Const. amend. 14, § 1. In section II of this opinion, we concluded that the process the appellant received satisfied due process requirements. The appellant's 42 U.S.C. § 1983 argument is, therefore, without merit, and we will not disturb the district court's ruling.

For the foregoing reasons, we affirm the district court's judgment and denial of appellant's motion to amend.

Costs to respondent.

BAKES, C.J., and BISTLINE, JOHNSON and BOYLE, JJ., concur.